UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY, a Washington corporation, <br><br> Plaintiff, <br><br> v. <br><br> HISCOX DEDICATED CORPORATION MEMBER LIMITED as representative member of Syndicate 33 at Lloyd's; STARR UNDERWRITING AGENTS LIMITED on behalf of Lloyd's Syndicate CVS 1919; and ALLIANZ UNDERWRITERS INSURANCE COMPANY, <br><br> Defendants. | No. 2:19-cv-01277-RSL <br><br> PLAINTIFF'S FIRST VERIFIED AMENDED COMPLAINT |

Plaintiff Weyerhaeuser Company, by and through its attorneys, alleges as follows:

I. **INTRODUCTION**

1. This is an action for breach of contract, bad faith, and violations of the Washington Insurance Fair Conduct Act and the Washington Consumer Protection Act arising from the Defendants' failure and refusal to provide owed insurance coverage and benefits.

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 1
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## II. PARTIES

2. Plaintiff Weyerhaeuser Company ("Weyerhaeuser" or "Plaintiff") is a corporation organized under the laws of the State of Washington and has its principal place of business in Seattle, Washington. Weyerhaeuser is authorized to do business and is doing business in the State of Washington.

3. Hiscox Dedicated Corporation Member Limited as representative member of Syndicate 33 at Lloyd's ("Hiscox") is an unincorporated association organized under the laws of the United Kingdom that, at all relevant times, was engaged in the business of selling insurance policies in the state of Washington.

4. The names of the entities or individuals that subscribe to Lloyd's Syndicate 33 along with representative member Hiscox and their respective locations is currently unknown to Plaintiff Weyerhaeuser.

5. Starr Underwriting Agents Limited on behalf of Lloyd's syndicate CVS 1919 ("Starr"), is an unincorporated association organized under the laws of the United Kingdom that, at all relevant times, was engaged in the business of selling insurance policies in the state of Washington.

6. The names of the entities or individuals that subscribe to Lloyd's Syndicate CVS 1919 along with representative member Starr and their respective locations are currently unknown to Plaintiff Weyerhaeuser.

7. Defendant Allianz Underwriters Insurance Company ("Allianz") is an insurance company organized under the laws of the State of Illinois that, at all relevant times, was engaged in the business of selling insurance policies within the state of Washington.

8. Hiscox, Starr, and Allianz are collectively referred to herein as "Defendants" or "Insurers."

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 2
No. 2:19-cv-01277-RSL

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## III. JURISDICTION AND VENUE

9. **Subject Matter Jurisdiction.** This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and the Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. Further, this Court has jurisdiction to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202. In addition, all of the Defendants have expressly agreed to the jurisdiction of this Court pursuant to an endorsement in each of their policies or by separate agreement or stipulation. To the extent any Defendant claims that its policy provides for mandatory arbitration or adjudication of disputes in any forum outside the courts of the State of Washington, such provisions are void ab initio by the express terms of RCW 48.18.200.

10. **Personal Jurisdiction.** All defendants have expressly submitted to the personal jurisdiction of the courts of the State of Washington, issued the subject insurance policies for delivery to Weyerhaeuser in Washington, and are otherwise conducting business in Washington. This Court thus has personal jurisdiction over all parties.

11. **Venue.** Venue is appropriate in this District pursuant to 28 U.S.C. § 1391, as the relevant insurance policies were issued to Weyerhaeuser in this District.

## IV. FACTUAL ALLEGATIONS

### The Policies

12. In consideration of substantial premiums paid by Weyerhaeuser, the Insurers issued excess liability insurance policies to Weyerhaeuser covering the period of November 1, 2016 to November 1, 2017, providing coverage for various potential losses.

13. Specifically, Defendants Hiscox and Starr are the lead underwriters on policy number BOWCN1600734 and Defendant Allianz issued policy number AUL2007750 (the "Policies").

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 3
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

14. The Policies are part of a "tower" of excess coverage provided by the Insurers and other primary and excess insurers not named in this action.

15. The Policies generally follow form to, or incorporate by reference, the terms and conditions set forth in the underlying lead policy issued by Lex-London (a division of AIG Europe Limited, and not a party to this action), except to the extent that the terms and conditions of the excess Policies conflict with the terms and conditions of the underlying coverage. In the event of such a conflict, the terms of the excess Policies control.

16. Weyerhaeuser timely paid all premiums due and owing under the Policies and complied with all applicable conditions contained therein.

### Weyerhaeuser's Claim for Coverage

17. Weyerhaeuser manufactured and sold TJI Joists coated with a fire retardant formula called Gen 4 Flak Jacket Protection (the "TJI Joists"), a wood product used in residential home construction to support flooring.

18. In and around May 2017, Weyerhaeuser started receiving complaints related to the TJI Joists. Weyerhaeuser subsequently determined that the TJI Joists emitted formaldehyde. In response, Weyerhaeuser undertook a major remediation program to address the situation.

19. Despite Weyerhaeuser's efforts, various individuals and entities asserted claims and initiated proceedings against Weyerhaeuser in relation to its TJI Joists.

20. The Policies provide coverage for the related defense costs and expenses incurred by Weyerhaeuser.

21. Weyerhaeuser satisfied its $10 million per-occurrence self-insured retention and has incurred covered defense costs and liabilities in connection with the TJI Joists that exceed the applicable coverage limits of the Policies.

22. Weyerhaeuser timely tendered claims to the Insurers on or about July 12, 2019 and repeatedly requested payments of the amounts owed. Weyerhaeuser has also repeatedly

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 4
No. 2:19-cv-01277-RSL

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

updated the Insurers on the status of the underlying claims, including providing at least six separate updates on the defense and indemnity costs incurred (which included breakdowns of those costs and supporting invoices and proofs of payment), as well as updates on the status of settlement efforts with respect to a number of lawsuits filed against Weyerhaeuser.

23. Weyerhaeuser's lead first-layer excess carrier, Lex-London, paid Weyerhaeuser the full amount of its policy limits ($25 million).

24. Despite receiving the claim more than two years ago, satisfaction of the self-insured retention, and exhaustion of the first layer of coverage, Defendants have not paid the benefits owed to Weyerhaeuser under the Policies.

25. Weyerhaeuser served Allianz, Hiscox and Starr with statutory notice pursuant to the Washington Insurance Fair Conduct Act, RCW 48.30 *et seq.*, on July 18, 2018. More than twenty days have elapsed since Weyerhaeuser provided such notice and none of the Defendants have paid the claim or otherwise cured their breach of the Policies.

26. Weyerhaeuser has and will continue to suffer harm as a result of the Defendants' improper conduct.

**The Arbitration Dispute with Hiscox and Starr and
Initial Litigation in the Western District of Washington**

27. The Policy issued by Hiscox and Starr, through its incorporation of the terms of the Lex-London policy, contain a "Law of Constriction and Interpretation Endorsement." That endorsement provides that any dispute arising under the terms of the Policy shall be governed by the substantive law of Washington.

28. The Policy issued by Hiscox and Starr does not require arbitration of coverage disputes. To the contrary, the Policy issued by Hiscox and Starr indicates that "[i]t is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or reinsured), will submit to

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 5
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

the jurisdiction of a Court of competent jurisdiction within the United States" for purposes of litigating any such coverage dispute ("U.S. Dispute Clause").

29. Pursuant to the U.S. Dispute Clause and the Policy more generally, Hiscox and Starr expressly agreed to litigate any coverage disputes in the United States jurisdiction of Weyerhaeuser's choosing and further agreed that the terms of the Policy trumped the terms of the underlying Lex-London policy, including any purported obligation to arbitrate contained within that underlying policy.

30. Despite those policy terms and the obligation to act in good faith imposed by Washington law, several of Weyerhaeuser's excess insures took the position that Weyerhaeuser was obligated to arbitrate its claims in the United Kingdom.

31. With regard to Hiscox and Starr specifically, on February 8, 2018 – two months before Weyerhaeuser filed its initial lawsuit against them on April 20, 2018 – Hiscox and Starr issued a reservation of rights letter to Weyerhaeuser ("Hiscox/Starr ROR") expressly asserting that Weyerhaeuser's claims were subject to arbitration in London, England. That letter: (1) took the position that policy issued by Hiscox and Starr followed form "to an underlying policy"; (2) asserted that the terms and conditions set forth in that underlying policy controlled; and (3) asserted that the underlying policy "contains an Arbitration Endorsement" that allegedly "requires arbitration of any dispute, controversy or claim arising out of or relating to this policy or to the breach . . . or validity of [the] Policy in London . . . ."

32. Thus, even though the U.S. Dispute Clause was present in its policy and indicated that Weyerhaeuser had the right to litigate its claims in the United States, the Hiscox/Starr ROR ignored that clause and affirmatively asserted on February 8, 2018 that Weyerhaeuser was instead allegedly obligated to arbitrate any claims it may have against Hiscox and Starr in London, England.

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 6
No. 2:19-cv-01277-RSL

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

33. Despite requests from Weyerhaeuser, at no time after February 8, 2018 did Hiscox or Starr ever reverse course and disclaim the position set forth in the Hiscox/Starr ROR that Weyerhaeuser's claims against Hiscox and Starr had to be arbitrated in the United Kingdom.

34. Weyerhaeuser's other excess insurers took similar positions, asserting that Weyerhaeuser was obligated to arbitrate its claims in London, England, with several of those insurers taking active steps to irreparably harm Weyerhaeuser's ability to litigate in the forum of its choosing (Washington State) and enforce the U.S. Dispute Clause.

35. On February 16, 2018, one of those excess insurers, Chubb Bermuda Insurance Limited ("Chubb"), filed suit in the United Kingdom with intent of depriving Weyerhaeuser the ability to litigate its claims in Washington State.

36. Specifically, without notice to Weyerhaeuser, Chubb secured an anti-suit injunction in the United Kingdom that prevented Weyerhaeuser from even attempting to litigate claims against Chubb in any venue other than via arbitration in the United Kingdom ("First Anti-Suit Injunction") under the penalty of criminal sanction.

37. The First Anti-Suit Injunction effectively prevented Weyerhaeuser from even attempting to litigate claims against Chubb in Washington State as a result, immediately and irrevocably harming Weyerhaeuser by depriving the company of its right to litigate coverage claims against Chubb in Washington State.

38. Out of the concerns raised by the First Anti-Suit Injunction, Weyerhaeuser began moving forward with filing a lawsuit to address the issue of arbitrability against Hiscox, Starr and other insurers on April 20, 2018, subsequently assigned case number 2:18-cv-00585-JLR and assigned to the Judge Robart ("Initial Federal Litigation").

39. That same day, April 20, 2018, Weyerhaeuser also wrote to Hiscox and Starr (along with other insurers) and indicated that, while it intended to move forward with the Initial

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 7
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Federal Litigation as a "precautionary measure" to prevent any further anti-suit injunctions, Weyerhaeuser would voluntarily dismiss any insurer from the Initial Federal Litigation that was "willing to stipulate" that Weyerhaeuser could litigate its claims in Washington State.

40. Allianz stipulated to that agreement, agreeing that jurisdiction and venue were proper in this Court with regard to any coverage dispute between the parties, and Weyerhaeuser dismissed it from the Initial Federal Litigation as a result of that stipulation.

41. Hiscox and Starr did not stipulate to that agreement.

42. The fact that Hiscox and Starr refused to stipulate to the litigation of Weyerhaeuser's claims in Washington State raised a reasonable belief that Hiscox and Starr would maintain the position that they asserted on February 8, 2018 (that Weyerhaeuser was allegedly obligated to arbitrate its claims against Hiscox and Starr in London, England) and would act on that position by seeking an anti-suit injunction in the United Kingdom in a method similar to that employed by other insurers both before and after the filing of the Initial Federal Litigation on April 20, 2018.

43. Given the harm caused to Weyerhaeuser by the First Anti-Suit Injunction and the immediate additional harm that would occur if additional anti-suit injunctions were filed against the Company, the Initial Federal Litigation sought a declaration from the court that any disputes between the parties arising under the policies were not subject to arbitration in the United Kingdom and instead could be litigated in a U.S. court.

44. Despite the pendency of the Initial Federal Litigation and the issue of arbitrability raised therein, another excess insurer (XL Catlin) whose policy included the same U.S. Dispute Clause present in the Hiscox and Starr policy subsequently filed suit against Weyerhaeuser in the United Kingdom to secure an injunction preventing Weyerhaeuser from litigating any claims in Washington State.

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 8
No. 2:19-cv-01277-RSL

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

45. Specifically, on April 30, 2018, without any notice to Weyerhaeuser and despite the fact that both XL Catlin and Weyerhaeuser were parties in the then-existing Initial Federal Litigation, XL Catlin secured a second anti-suit injunction in the United Kingdom that prevented Weyerhaeuser from even attempting to litigate claims against XL Catlin in any venue other than via arbitration in the United Kingdom under the penalty of criminal sanction ("Second Anti-Suit Injunction").

46. The Second Anti-Suit Injunction effectively prevented Weyerhaeuser from even attempting to litigate claims against XL Catlin in Washington State as a result, immediately and irrevocably harming Weyerhaeuser by depriving the company of its ability to litigate coverage claims or arbitrability issues against XL Catlin in Washington State.

47. Weyerhaeuser was forced to agree to dismiss its litigation in Washington against XL Catlin as a result of the Second Anti-Suit injunction.

48. As a result of the harm that it suffered as a result of the First Anti-Suit Injunction and the Second Anti-Suit Injunction, on May 7, 2018, Weyerhaeuser filed a Motion for Temporary Restraining Order in the Initial Federal Litigation seeking an order enjoining the remaining excess insurers (including Hiscox and Starr) from "tak[ing] any further action to enjoin [the] proceedings" before the Court.

49. Recognizing the potential for immediate harm implicated by the actions of Weyerhaeuser's insurers, the manner in which it would materially impact Weyerhaeuser's legal right to litigate its claims for coverage in Washington State, on May 7, 2018, the Court granted Weyerhaeuser's motion, finding that "TRO Defendants may take a similar course of action as XL Catlin, thus subjecting Weyerhaeuser to immediate, substantial and irreparable harm of being unable to proceed in its first-filed suit, and being forced to argue its case instead in a foreign court. Should Weyerhaeuser face injunctions similar to the one obtained by XL Caitlin,

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 9
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Weyerhaeuser is placed in a severely prejudicial position" of forfeiting its choice of forum or facing significant penalties.

50. As a result of that finding, the Court entered a Temporary Restraining Order enjoining the remaining excess insures that were then named as defendants in the Initial Federal Litigation (again, including Hiscox and Starr) from "seeking or obtaining, in any other forum, an injunction against Weyerhaeuser's instant action."

51. Hiscox and Starr subsequently stipulated to a preliminary injunction barring them from "instituting or joining in any action, in any other forum, aimed at securing a determination on the issue whether Weyerhaeuser is required, under the policies issued by the TRO Defendants, to arbitrate disputes regarding coverage under those policies" that has remained in place in the Federal Litigation ("Preliminary Injunction").

52. To be clear, the Preliminary Injunction prevented Hiscox and Starr from filing an anti-suit injunction against Weyerhaeuser in the United Kingdom, the filing of which would have immediately and irreparably harmed Weyerhaeuser in the same manner set forth above relative to the First Anti-Suit Injunction and the Second Anti-Suit Injunction by depriving the company of its ability to litigate coverage and arbitrability claims against Hiscox and Starr in Washington State.

53. As a result of the Preliminary Injunction, Hiscox and Starr have been unable to file an anti-suit injunction against Weyerhaeuser since May 7, 2018.

54. Other insurers within Weyerhaeuser's tower of excess coverage, however, continued to do so.

55. Specifically, on May 17, 2018, without any notice to Weyerhaeuser, Endurance Specialty Insurance Limited ("Endurance") secured a third anti-suit injunction in the United Kingdom that prevented Weyerhaeuser from even attempting to litigate claims against

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 10
No. 2:19-cv-01277-RSL

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Endurance in any venue other than via arbitration in the United Kingdom under the penalty of criminal sanction ("Third Anti-Suit Injunction").

56. The Third Anti-Suit Injunction effectively prevented Weyerhaeuser from even attempting to litigate claims against Endurance in Washington State as a result, immediately and irrevocably harming Weyerhaeuser by depriving the company of its ability to litigate coverage claims or arbitrability issues against Endurance in Washington State.

57. In August of 2018, Weyerhaeuser filed a motion for summary judgment in the Initial Federal Litigation to resolve the question of whether its claims were subject to arbitration in the United Kingdom.

58. The Court in the Initial Federal Litigation recently indicated that it may lack jurisdiction to resolve the issues in the Initial Federal Litigation due to concerns with regard to justiciability, including, but not limited to, the question of whether Weyerhaeuser's claim for declaratory relief was ripe in the absence of a substantive coverage claim being asserted against Hiscox and Starr.

59. The Court also raised concerns about whether it would have jurisdiction to maintain the Preliminary Injunction if the case was deemed unripe, raising the possibility that the Preliminary Injunction could be withdrawn upon such a determination by the Court.

60. Specifically, on August 2, 2019, the Court in the Initial Federal Litigation issued an "Order Scheduling Hearing" in which it asked the parties to address justiciability and whether a determination that the claim for declaratory relief pled in the Initial Federal Litigation was unripe required the vacation of "its prior order enjoining Defendants from instituting any action, in any other forum, aimed at determining whether Weyerhaeuser is required to arbitrate coverage disputes under Defendants' excess liability policies."

61. The withdrawal of the Preliminary Injunction would cause immediate and irreparable harm to Weyerhaeuser in that Hiscox and Starr would have the ability to secure an

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 11
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

anti-suit injunction in the United Kingdom similar to the First Anti-Suit Injunction, the Second Anti-Suit Injunction, and the Third Anti-Suit Injunction and prevent Weyerhaeuser from even attempting to litigate claims against Hiscox and Starr in any venue other than via arbitration in the United Kingdom under the penalty of criminal sanction, immediately and irrevocably harming Weyerhaeuser by depriving the company of its ability to litigate coverage claims or arbitrability issues against those defendants in Washington State.

62. On August 7, 2019, in order to maintain the status quo and verify whether Hiscox and Starr intended to seek a similar anti-suit injunction in the United Kingdom if the Preliminary Injunction were withdrawn, Weyerhaeuser requested that Hiscox and Starr voluntarily "agree to a permanent injunction similar to Judge Robart's existing preliminary injunction order."

63. Hiscox and Starr refused to do so.

64. On Friday August 9, 2019, in order to maintain the status quo until such time as Judge Robart was able to address the justiciability issue, provide Weyerhaeuser with adequate time to seek an alternative relief to prevent additional anti-suit injunctions if the Preliminary Injunction were withdrawn by the Court, and to verify whether Hiscox and Starr intended to seek a similar anti-suit injunction in the United Kingdom if the Preliminary Injunction were withdrawn, Weyerhaeuser requested that Hiscox and Starr voluntarily agree to a limited, one-week extension of the Preliminary Injunction.

65. Hiscox and Starr refused to do so.

66. Hiscox and Starr instead submitted briefing and argument to the Court in the Initial Federal Litigation indicating that the Court should find that case non-justiciable and withdraw the Preliminary Injunction.

67. As a result of Hiscox's and Starr's position that the Initial Federal Litigation was non-justiciable and their refusal to agree to a limited injunction that would maintain the status

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 12
No. 2:19-cv-01277-RSL

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

quo relative to the Preliminary Injunction for a limited period of time, Weyerhaeuser was forced to initiate this action in state court the following Monday, August 12, 2019.

68. During oral argument before the Court in the Initial Federal Litigation the following morning – Tuesday, August 13, 2019 – counsel for Weyerhaeuser reiterated the fact that Hiscox and Starr clearly intended to move for an anti-suit injunction immediately upon the withdrawal of the Preliminary Injunction and explained to the Court how doing so would irreparably harm Weyerhaeuser in the manner confirmed by Judge Robart's May 7, 2018 order on Weyerhaeuser's Motion for a Temporary Restraining Order.

69. Counsel for Weyerhaeuser also discussed the filing of this action in Superior Court, expressly indicating to the Court and opposing counsel that Weyerhaeuser intended to seek a temporary restraining order that afternoon to prevent Hiscox and Starr from seeking to file a fourth anti-suit injunction if the Preliminary Injunction was withdrawn.

70. In order to prevent Weyerhaeuser from securing a temporary restraining order in Superior Court that afternoon, however, Hiscox and Starr removed this case to federal court immediately after the hearing before Judge Robart and subsequently filed a motion purporting to "stay" Weyerhaeuser's ability seek injunctive relief.

71. The totality of these facts – (a) the course of conduct evidenced by other insurers within the same tower of excess of insurance coverage as Hiscox and Starr via the filing of the First Anti-Suit Injunction, the Second Anti-Suit Injunction, and the Third Anti-Suit Injunction; (b) the position expressly asserted in the Hiscox/Starr ROR on February 8, 2018 that Weyerhaeuser's claims must be arbitrated in London, England; (c) Hiscox's and Starr's refusal to renounce that position, including failing to respond to Weyerhaeuser's specific request that it do so on April 20, 2018 – the same day that Weyerhaeuser filed the Initial Federal Litigation to stop additional insurers like Hiscox and Starr from filing a fourth anti-suit injunction; (d) Hiscox's and Starr's subsequent position in the Initial Federal Litigation that Weyerhaeuser's

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 13
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

claims were subject to arbitration in the United Kingdom; (e) their repeated refusal to agree to a limited injunction to maintain the status quo while the Court resolved the issue of justiciability in the Initial Federal Litigation; and (f) their attempts to deprive Weyerhaeuser of the ability to secure an alternative injunction in this case in order to maintain the status quo – establishes that Hiscox and Starr intend to immediately file an anti-suit injunction against Weyerhaeuser upon the withdrawal of the Preliminary Injunction.

72. Allowing Hiscox and Starr to do so would cause immediate and irreparable harm to Weyerhaeuser by preventing Weyerhaeuser from litigating claims against Hiscox and Starr in any venue other than via arbitration in the United Kingdom under the penalty of criminal sanction, immediately and irrevocably harming Weyerhaeuser by depriving the company of its ability to litigate coverage claims or arbitrability issues against those defendants in Washington State.

### V. FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

73. Plaintiff incorporates and realleges paragraphs 1 through 72 as if fully set forth herein.

74. Plaintiff incurred covered losses in excess of the limits of the Policies.

75. By virtue of the conduct set forth above, by unreasonably interpreting their Policies, failing to adequately and timely respond, and failing to properly reimburse Plaintiff for Plaintiff's losses under the terms of the Policies, Defendants breached the obligations set forth therein.

76. As a direct and proximate result of the Defendants' breaches of the Policies, which is continuing to at least the date of this Amended Complaint, Defendants have deprived Plaintiff of the benefit of the insurance coverage for which it paid substantial premiums, damaging Plaintiff in an amount to be proven at trial.

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 14
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## VI. SECOND CAUSE OF ACTION
### INSURANCE BAD FAITH

77. Plaintiff incorporates and realleges paragraphs 1 through 76 as if fully set forth herein.

78. By virtue of the conduct set forth above, Defendants' failure to reasonably investigate, interpret, apply, and honor the terms of their insurance Policies with Plaintiff constitutes violations of Washington's insurance regulations and breach of Defendants' duty of good faith and fair dealing.

## VII. THIRD CAUSE OF ACTION
### VIOLATION OF WASHINGTON'S INSURANCE FAIR CONDUCT ACT

79. Plaintiff incorporates and realleges paragraphs 1 through 78 as if fully set forth herein.

80. By virtue of the conduct set forth above, Defendants' failure to reasonably investigate, interpret, apply, and honor the terms of their insurance Policies with Plaintiff constitutes violations of Washington's insurance regulations and breach of Defendants' duty of good faith and fair dealing.

81. Accordingly, Plaintiff is entitled to damages, prejudgment interest, and attorneys' fees from the Defendants.

## VIII. FOURTH CAUSE OF ACTION
### VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT

82. Plaintiff incorporates and realleges paragraphs 1 through 81 as if fully set forth herein.

83. By virtue of the conduct set forth above, Defendants have breached Washington's insurance regulations, a single violation of which constitutes a *per se* unfair trade practice under the Washington Consumer Protection Act, RCW 19.86, *et seq.*

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 15
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

84. Independent of those duties imposed by Washington's insurance regulations, Defendants' conduct otherwise constitutes an unfair and/or unlawful practice in trade or commerce.

85. Plaintiff has suffered injury in its business or property as a result of Defendants' unfair or unlawful practices. Accordingly, Plaintiff is entitled to damages, treble damages, prejudgment interest, and attorneys' fees from Defendants.

## IX. FIFTH CAUSE OF ACTION
## ATTORNEYS' FEES

86. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 85 as if fully set forth herein.

87. Plaintiff, as the insured in a legal action to obtain the benefits under its insurance policy, is entitled to attorney's fees and costs associated with compelling Defendants to fulfill their contractual obligations thereunder.

## X. RESERVATION OF RIGHTS—DECLARATORY RELIEF

88. Should the Western District of Washington dismiss the Initial Federal Litigation on the grounds that it lacks jurisdiction to adjudicate the issues presently before it, Weyerhaeuser reserves its right to amend this Amended Complaint to add a cause of action for declaratory relief relative to the proper venue and arbitrability of this dispute.

## XI. REQUEST FOR RELIEF

Plaintiff requests relief as follows:

A. For a judgment declaring that Defendants are obligated to reimburse Plaintiff in an amount to be proven at trial;

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 16
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

B. For other damages as may be proven at trial, including treble damages for Defendants' violation of the Insurance Fair Conduct Act and the Consumer Protection Act;

C. For costs and attorney's fees;

D. For prejudgment interest; and

E. For such other and further relief as the Court may deem just and equitable.

DATED this 16th day of August, 2019.

*s/ Michael A. Moore*
Michael A. Moore, WSBA No. 27047
Kelly H. Sheridan, WSBA No. 44746
Jocelyn Whiteley, WSBA No. 49780
CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600 Phone
(206) 625-0900 Fax
Email: mmoore@corrcronin.com
ksheridan@corrcronin.com
jwhiteley@corrcronin.com
Attorneys for Plaintiff

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 17
No. 2:19-cv-01277-RSL

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## VERIFICATION

I, Conrad Smucker, declare as follows:

1. I am Chief Competition Counsel for Plaintiff Weyerhaeuser Company ("Weyerhaeuser").

2. I am over the age of 18 and am competent to testify to the below facts.

3. I have personal knowledge of the facts set forth in the foregoing *First Amended Verified Complaint*, and if called upon to testify I could competently testify as to the matters stated herein.

4. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *First Amended Verified Complaint* are true and correct to the best of my knowledge.

DATED this 16th day of August, 2019 at Seattle, Washington.

_____
Conrad Smucker

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 18
No. 2:19-cv-01277-RSL

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

# CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark P. Scheer
Jennifer L. Crow
Matthew C. Erickson
Scheer.Law PLLC
600 University Street, Suite 2100
Seattle, WA 98101
Phone: (206) 800-4070
Email: mark@scheer.law
       Jen@scheer.law
       MattE@scheer.law

*s/ Michael A. Moore*
Michael A. Moore, WSBA No. 27047
Attorney for Plaintiff
CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Telephone: (206) 625-8600
E-mail: mmoore@corrcronin.com

PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT – 19
No. 2:19-cv-01277-RSL

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1257 00003 jh16d8271m