THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WEYERHAEUSER COMPANY,

Plaintiff,

v.

HISCOX DEDICATED CORPORATION
MEMBER LIMITED as representative member
of Syndicate 33 at Lloyd's; STARR
UNDERWRITING AGENTS LIMITED on
behalf of Lloyd's Syndicate CVS 1919; and
ALLIANZ UNDERWRITERS INSURANCE
COMPANY,

Defendants.

No. 2:19-cv-01277-RSL

**MOTION FOR TEMPORARY
RESTRAINING ORDER**

**NOTE ON MOTION CALENDAR:
Friday, August 16, 2019**

JURY DEMAND

## I. INTRODUCTION AND RELIEF REQUESTED

Weyerhaeuser Company ("Weyerhaeuser") moves for a temporary restraining order barring Defendants Hiscox Dedicated Corporation Member Limited ("Hiscox") and Starr Underwriting Agents Limited ("Starr") from filing competing litigation in the United Kingdom in order to protect the Court's jurisdiction to hear this case. Weyerhaeuser has already been deprived of its ability to bring suit in Washington State relative to different non-party excess carriers that are part of the insurance coverage tower at issue when those carriers secured *ex parte* orders from an English court forbidding Weyerhaeuser from litigating its claims against

MOTION FOR TEMPORARY RESTRAINING ORDER – 1

those other carriers in Washington.  Any similar action by Hiscox and Starr would irreparably harm Weyerhaeuser – <u>a fact confirmed by Judge Robart when he initially granted the same relief sought by Weyerhaeuser here in a related case</u>.  Given that Judge Robart has raised concerns about his jurisdiction over that related case, however, Weyerhaeuser files the instant motion in order to preserve the status quo and ensure that Weyerhaeuser's right to litigate its claim to coverage in Washington remains protected.

Accordingly, in order to maintain the status quo, Weyerhaeuser respectfully requests that the Court enter: (1) a temporary restraining order enjoining Hiscox and Starr from seeking an anti-suit injunction in an English court pursuant to the same terms already entered by Judge Robart in that related case;[1] and (2) establish a hearing date and briefing schedule for Weyerhaeuser's application for a Preliminary Injunction on those same terms.

## II. <u>STATEMENT OF FACTS</u>

### A.  The Underlying Flak Jacket Product Liability Claims

In or about May 2017, Weyerhaeuser started receiving complaints of odors and irritation in certain homes where its TJI Joists with Gen 4 Flak Jacket Protection (a fire retardant coating) had been installed.  First Amended Verified Complaint ("Complaint") at ¶¶ 17-18, attached as Exhibit A to the Declaration of Jocelyn J. Whiteley in Support of Weyerhaeuser's Motion for Temporary Restraining Order and Order to Show Cause ("Whiteley Declaration").  Weyerhaeuser's subsequent investigation determined that the TJI Joists emitted formaldehyde.  *Id.*  Weyerhaeuser immediately ceased production of the Gen 4 Flak Jacket coating and undertook major remediation efforts.  Declaration of John Lambdin, attached as Exhibit B to the Whiteley Declaration at ¶ 2.  By this time Weyerhaeuser's TJI Joists with Gen 4 Flak Jacket coating had already been sold to approximately 350 builders and installed in approximately

---

[1]  *Weyerhaeuser Company v. Novae Syndicate 2007, et al.*, W.D. Wash. No. 2:18-cv-00585-JLR, Dkt. Nos. 7 and 17.

MOTION FOR TEMPORARY RESTRAINING ORDER – 2

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

2,400 homes throughout the Northeast, Midwest, and Colorado. *Id.* Despite Weyerhaeuser's efforts to address the complaints, multiple lawsuits were filed against Weyerhaeuser including class action litigation in New Jersey, New York, Delaware, Colorado, Pennsylvania, Minnesota, and Washington. *Id.* Weyerhaeuser incurred more than $300 million in losses associated with its Gen 4 TJI Joists to date – a sum that exceeds the applicable limits of all policies at issue in this litigation. Whiteley Declaration, Ex. A at ¶ 74.

**B. The Policies at Issue**

The underlying claims are insured under a series or "tower" of excess liability policies that Weyerhaeuser purchased covering the 2016-17 policy year. Whiteley Declaration, Ex. B. at ¶ 3. Weyerhaeuser's insurance tower provides a total of $300 million in liability limits, which attach above a $10 million self-insured retention ("SIR"). *Id.* The first layer policy was issued by Lex-London, a division of AIG Europe Ltd., which has paid its full $25 million limit and is not a party to this action. *Id.* Hiscox and Starr are the lead underwriters on policy number BOWCN1600734 (the "Policy"). *See* the Policy, attached as Exhibit C to the Whiteley Declaration.

The 2016-17 tower is written on a "follow form" basis, meaning that the higher-layer policies sitting atop the Lex-London policy generally follow, or incorporate by reference, the terms and conditions of the Lex-London policy, unless excluded or contradicted by the terms of each policy. Whiteley Declaration, Ex. B at ¶ 5. Each of the excess policies at issue provide that in the event of inconsistencies between such excess policy and the Lex-London policy, the particular terms and conditions of the excess policy will govern. *Id.*; *see also* Ex. C at 7.[2]

---

[2] The Company agrees that, except as may otherwise be endorsed to this Policy, this Policy will follow:

1.    the same terms, definitions, exclusions and conditions as are, at inception hereof, contained in the Lead Underlying Policy, and;

2.    all subsequent changes made to the terms, definitions, exclusions and conditions of the Lead Underlying Policy that do not broaden the scope of the coverage already provided.

MOTION FOR TEMPORARY RESTRAINING ORDER – 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**C. The Policy Selects Washington Law As the Governing Substantive Law and Provides That Disputes Under Its Terms Shall Be Litigated in the United States**

As noted above, the Policy issued by Hiscox and Starr follows form to the lead underlying policy issued by Lex-London except insofar as the terms of the Policy conflict with the terms of the Lex-London policy.  That policy contains a Law of Construction and Interpretation Endorsement, which provides that any dispute arising under the Policy shall be governed by the substantive law of Washington.  Whiteley Declaration, Ex. A at ¶ 27.

The Policy also contains an endorsement entitled the "Service of Suit Clause (U.S.A.) N.M.A. 1998 Endorsement" (the "U.S. Dispute Clause").  The U.S. Dispute Clause makes clear that any disputes arising under the Policy will be resolved through litigation in the United States, and expressly provides that Hiscox and Starr "submit to the jurisdiction" of a United States court to resolve any such disputes:

> It is agreed that in the event of a failure of the Underwriters hereon to pay any amount claimed to be due hereunder, *the Underwriters hereon*, at the request of the Insured (or Reinsured), *will submit to the jurisdiction of a Court of competent jurisdiction within the United States*.

*Id.* at ¶ 28 (emphasis added).  The U.S. Dispute Clause differs in this regard from the terms of the underlying Lex-London policy, which contains an "Arbitration Endorsement" purporting to require that any disputes arising under that policy are subject to arbitration in the United Kingdom.  *See Id.* at ¶ 31.  Again, the Hiscox/Starr Policy expressly provides that its terms control insofar as those terms differ from the terms of the Lex-London policy—meaning that U.S. Dispute Clause, not the underlying Arbitration Endorsement, dictates where the coverage dispute between Weyerhaeuser and Hiscox/Starr will be resolved.

**D. The Insurers' Anti-Suit Injunctions and Initial Federal Litigation Filed in Response.**

Despite the clear language of the U.S. Dispute Clause, several of Weyerhaeuser's excess insures took the position that Weyerhaeuser was obligated to arbitrate its claims in the United

MOTION FOR TEMPORARY RESTRAINING ORDER – 4

Kingdom. Complaint at ¶ 31. Most importantly, defendants Hiscox and Starr issued a reservation of rights letter to Weyerhaeuser ("Hiscox/Starr ROR") in February of 2018 expressly asserting that Weyerhaeuser's claims were subject to arbitration in London, England. *Id.* at ¶ 31. That letter: (1) took the position that the policy issued by Hiscox and Starr followed form "to an underlying policy"; (2) asserted that the terms and conditions set forth in that underlying policy controlled; (3) asserted that the underlying policy "contains an Arbitration Endorsement" that allegedly "requires arbitration of any dispute, controversy or claim arising out of or relating to this policy or to the breach . . . or validity of [the] Policy in London . . ." *Id.* Thus, even though the U.S. Dispute Clause was present in its policy and indicated that Weyerhaeuser had the right to litigate its claims in the United States, the Hiscox/Starr ROR ignored that clause and affirmatively asserted that Weyerhaeuser was instead allegedly obligated to arbitrate any claims it may have against Hiscox and Starr in London, England. *Id.* at ¶ 32. Weyerhaeuser's other excess insurers took similar positions, with several of those insurers taking active steps to irreparably harm Weyerhaeuser's ability to litigate in Washington pursuant to the U.S. Dispute Clause. *Id.* at ¶ 34.

On February 16, 2018, one of those excess insurers, Chubb Bermuda Insurance Limited ("Chubb"), filed suit in the United Kingdom with the intent of depriving Weyerhaeuser the ability to litigate its claims in Washington State. *Id.* at ¶ 35. Specifically, without notice to Weyerhaeuser, Chubb secured an anti-suit injunction in the United Kingdom that prevented Weyerhaeuser from even attempting to litigate claims against Chubb in any venue other than via arbitration in the United Kingdom under the penalty of criminal sanction ("First Anti-Suit Injunction"). *Id.* at ¶ 36.

Out of the concerns raised by the First Anti-Suit Injunction and to resolve the question of whether it could litigate its claims for coverage in Washington State, Weyerhaeuser began moving forward with filing a lawsuit in the Western District of Washington against Hiscox,

MOTION FOR TEMPORARY RESTRAINING ORDER – 5

Starr and other insurers on April 20, 2018 ("Initial Federal Litigation"). *Id*. at ¶ 38. Given the harm caused to Weyerhaeuser by the First Anti-Suit Injunction the immediate additional harm that would occur if additional anti-suit injunctions were filed against the Company, Weyerhaeuser sought a declaration from the Court confirming that any disputes between the parties arising under the policies were not subject to arbitration in the United Kingdom and instead could be litigated in a U.S. court. *Id* at ¶ 43.

Weyerhaeuser wrote to Hiscox and Starr (along with other insurers) the same day and indicated that, while it intended to move forward with the Initial Federal Litigation as a "precautionary measure" to prevent any further anti-suit injunctions, Weyerhaeuser would voluntarily dismiss any insurer from the Initial Federal Litigation that was "willing to stipulate" that Weyerhaeuser could litigate its claims in Washington State. *Id* at ¶ 39. Defendant Allianz stipulated to that agreement, agreed that jurisdiction and venue were proper in this Court with regard to any coverage dispute between the parties, and Weyerhaeuser dismissed it from the Initial Federal Litigation as a result of that stipulation. *Id* at ¶ 40. Confirming their intent to move for their own anti-suit injunction in the United Kingdom, however, Hiscox and Starr did not stipulate to that agreement. *Id* at ¶ 41.

On April 30, 2018, only days after it was named as a defendant the Initial Federal Litigation, a different excess insurer (XL Catlin) filed suit against Weyerhaeuser in the United Kingdom to secure another anti-suit injunction. *Id.* at ¶ 45. Specifically, without any notice to Weyerhaeuser, XL Catlin secured a second anti-suit injunction in the United Kingdom that prevented Weyerhaeuser from litigating claims against XL Catlin in any venue other than via arbitration in the United Kingdom under the penalty of criminal sanction ("Second Anti-Suit Injunction"). *Id.* Weyerhaeuser's first notice of the Second Anti-Suit Injunction came on Thursday, May 3, 2018 when XL Catlin emailed it an Interim Order already issued by the London court. *See generally* Declaration of Franklin D. Cordell, attached as Exhibit D to the

MOTION FOR TEMPORARY RESTRAINING ORDER – 6

Whiteley Declaration.  The Interim Order: (1) purported to preclude Weyerhaeuser from proceeding against XL Catlin in Western District; (2) purported to penalize violation of its terms via fines, imprisonment, and asset seizure against Weyerhaeuser, as well as imprisonment of its directors and counsel; and (3) required Weyerhaeuser to respond in full on the merits of the parties' arbitrability dispute at a subsequent hearing.  *Id*.  In light of the injunction and harsh penalties imposed therefrom, Weyerhaeuser was forced to dismiss XL Catlin from the Initial Federal Litigation.  Whiteley Declaration, Ex. A at ¶ 47.

Given the harm caused by the First Anti-Suit Injunction and the Second Anti-Suit Injunction, Weyerhaeuser filed a Motion for Temporary Restraining Order in the Initial Federal Litigation on May 7, 2018.  That motion sought an order enjoining the remaining excess insurers (including Hiscox and Starr) from "tak[ing] any further action to enjoin [the] proceedings" before the Court.  Whiteley Declaration, Ex. A at ¶ 48.

Recognizing the potential for immediate harm to Weyerhaeuser's right to litigate its claims in Washington, Judge Robart granted Weyerhaeuser's motion and found that:

> The TRO Defendants [including Hiscox and Star] may take a similar course of action as XL Catlin, thus ***subjecting Weyerhaeuser to immediate, substantial and irreparable harm of being unable to proceed in its first-filed suit, and being forced to argue its case instead in a foreign court***.  Should Weyerhaeuser face injunctions similar to the one obtained by XL Catlin, ***Weyerhaeuser is placed in the "severely prejudicial position" of forfeiting its choice of forum or facing significant penalties***.

Judge Robart's May 7, 2018 Order Granting Weyerhaeuser's Motion for a TRO, attached as Exhibit E to the Whiteley Declaration at 5.  Hiscox and Starr subsequently stipulated to a preliminary injunction barring them from "instituting or joining in any action, in any other forum, aimed at securing a determination on the issue whether Weyerhaeuser is required, under the policies issued by the TRO Defendants, to arbitrate disputes regarding coverage under those policies" that has remained in place in the Federal Litigation ("Preliminary Injunction").  Whiteley Declaration, Ex. A at ¶ 51.

MOTION FOR TEMPORARY RESTRAINING ORDER – 7

**CORR CRONIN** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

        To be clear, the Preliminary Injunction is the only mechanism that has prevented Hiscox

and Starr from seeking an immediate anti-suit injunction against Weyerhaeuser in the United

Kingdom.  The removal of the Preliminary Injunction without a different form of interim

injunctive relief in its place would immediately and irreparably harm Weyerhaeuser in the same

manner set forth above relative to the First Anti-Suit Injunction and the Second Anti-Suit

Injunction and the same manner articulated in Judge Robart's May 7, 2018 order – allowing

Hiscox and Star to immediately and permanently deprive Weyerhaeuser of its rights under their

policy to litigate claims in Washington State.

   **E.  The Western District Issues an Order to Show Cause Regarding the Justiciability
        of the Dispute.**

        Weyerhaeuser subsequently filed a motion for summary judgment in the Initial Federal

Litigation on the issue of arbitrability.  *Id.* at ¶ 57.  On July 22, 2019, however, Judge Robart

issued an order requesting the parties to address whether: (1) the Court had jurisdiction to

adjudicate arbitrability and venue issues in the absence of substantive coverage claims; and (2)

the Preliminary Injunction would necessarily lapse if the Court concluded it did not.  *Id.* at ¶ 58-

60.  Again, the withdrawal of the Preliminary Injunction would cause irreparable harm to

Weyerhaeuser in that Hiscox and Starr would have the ability to immediately secure an anti-

suit injunction in the United Kingdom similar to the First Anti-Suit Injunction and the Second

Anti-Suit Injunction, thereby preventing Weyerhaeuser from continuing to litigate claims

against Hiscox and Starr in Washington State.  *Id*. at ¶ 61.  Judge Robart subsequently set a

hearing on the issue for Tuesday, August 13, 2019.

        In order to maintain the status quo and verify whether Hiscox and Starr intended to seek

a similar anti-suit injunction in the United Kingdom if the Preliminary Injunction were

withdrawn, on August 7, 2019, Weyerhaeuser requested that Hiscox and Starr voluntarily

"agree to a permanent injunction similar to Judge Robart's existing preliminary injunction

order."  *Id*. at ¶ 62.  Hiscox and Starr refused to do so.  *Id*. at ¶ 63.

MOTION FOR TEMPORARY RESTRAINING ORDER – 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

   In a second attempt to merely maintain the status quo until such time as Judge Robart was able to address the justiciability issue and provide Weyerhaeuser with adequate time to seek an alternative injunctive relief to prevent additional anti-suit injunctions if the Preliminary Injunction were withdrawn, Weyerhaeuser requested that Hiscox and Starr voluntarily agree to a limited, one-week extension of the Preliminary Injunction on Friday, August 9, 2019. *Id.* at ¶ 64. Hiscox and Starr refused to do so. *Id.* at ¶ 65. Hiscox and Starr instead submitted briefing and argument to the Court in the Initial Federal Litigation indicating that the Court should find that case non-justiciable and withdraw the Preliminary Injunction. *Id.* at ¶ 66.

   As a result of Hiscox's and Starr's position that the Initial Federal Litigation was non-justiciable and their refusal to agree to a limited injunction that would maintain the status quo relative to the Preliminary Injunction for a limited period of time, Weyerhaeuser was forced to initiate this action in Washington State Superior Court the following Monday, August 12, 2019. *Id.* at ¶ 67.

   During oral argument before the Court in the Initial Federal Litigation the following morning – Tuesday, August 13, 2019 – counsel for Hiscox and Starr reiterated their position that a ruling of non-justiciability as to the Initial Federal Litigation would <u>moot</u> the existing Preliminary Injunction. Whiteley Declaration, Ex. F, Verbatim Report of Proceedings at 18 ("a dismissal would vacate and moot any order"). <u>In other words, Hiscox and Starr could immediately move for another anti-suit injunction in the United Kingdom upon a finding by Judge Robart that he lacked jurisdiction, as that finding would "vacate and moot" the Preliminary Injunction and the protections afforded by that order.</u> Counsel for Weyerhaeuser noted that Hiscox's and Starr's position confirmed that they clearly intended to move for an anti-suit injunction and explained to the Court how doing so would irreparably harm Weyerhaeuser. *Id.* at 11, 13, 22-23.

MOTION FOR TEMPORARY RESTRAINING ORDER – 9

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Judge Robart and counsel for Weyerhaeuser then expressly discussed <u>this separate action</u>, then situated in Washington State Superior Court.   *Id*. at 23-24.   Counsel for Weyerhaeuser explained that the superior court action had been filed the day before because Weyerhaeuser "could not delay filing it anymore given the actions of Hiscox and Starr and their position that [the Initial Federal Litigation] was unripe," noted the risk that such a ruling would create relative to the withdrawal of the Preliminary Injunction, and expressly indicated that Weyerhaeuser intended to seek a temporary restraining order in the superior court case immediately after the conclusion of the hearing before Judge Robart:

> Again, there's a risk, a real and immediate risk, that [Hiscox and Starr] will get an antisuit injunction enjoining us from litigating claims in the U.S. So we filed the complaint last night   ***Our intent is to leave here, go to ex parte and try to secure a temporary restraining order that prevents that from happening***, because otherwise we will be exposed [to a UK anti-suit injunction].

*Id*. at 24 (emphasis added).

Most importantly for purposes of this motion, Judge Robart appeared to indicate that the proper course was for Weyerhaeuser to seek an injunction in this matter to address the potential risk posed by the withdrawal of the Preliminary Injunction, indicating that Weyerhaeuser had the ability to seek further injunctive relief "<u>albeit in the King County Superior Court</u>."   *Id*. at 25 (emphasis added).   Counsel for Weyerhaeuser responded by indicating that they would immediately pursue a TRO in state court.  *Id*.

After providing copies of Weyerhaeuser's Motion for a Temporary Restraining Order and supporting papers (including the new complaint), Weyerhaeuser then proceeded to King County Superior Court to secure the injunction discussed with Judge Robart that morning.  In an apparent attempt to prevent Weyerhaeuser from doing so, however, Hiscox and Starr immediately removed this case.  Whiteley Declaration, Ex. A at ¶ 70.  Hiscox and Starr continued their efforts to prevent Weyerhaeuser from securing the necessary injunction by filing what they styled as a motion to "stay" this matter the following day, August 14, 2019 ("Stay

MOTION FOR TEMPORARY RESTRAINING ORDER – 10

Motion"). Dkt. No. 4. The Stay Motion was improperly noted for August 23, 2019, asserted that this Court lacked jurisdiction to issue a temporary restraining order until actual service on Hiscox and Starr occurred (a position not supported by the authority cited in the Stay Motion), and argued that an additional temporary restraining order was allegedly unnecessary "because the relief sought by Plaintiff is already in place" in the Initial Federal Action and Weyerhaeuser did not allegedly need "two Temporary Restraining Orders . . . seeking to prohibit the same conduct." *Id*. at 4-6.

That position, of course, is directly contrary to the position taken by Hiscox and Starr the day before during oral argument before Judge Robart – the assertion that the existing Preliminary Injunction would immediately lapse at the time of a decision by Judge Robart that the claims asserted in the Initial Federal Litigation were unripe. Whiteley Declaration, Ex. F, Verbatim Report of Proceedings at 18 ("a dismissal would vacate and moot any order"). <u>In other words, Hiscox and Starr could immediately move for another anti-suit injunction in the United Kingdom upon such a finding of non-justiciability.</u> That is the potential harm that this motion seeks to prevent, as Hiscox and Starr clearly intend to immediately move for such an order in the United Kingdom if their conduct is not enjoined now. Indeed, nothing Hiscox's and Starr's Stay Motion denied the fact.

In sum, this motion is directed at maintaining the status quo, keeping the protections currently provided by the existing Preliminary Injunction in place in the event that Judge Robart determines that the claims as pled in the Initial Federal Litigation are unripe. Doing so will allow this Court to retain jurisdiction to determine the issue of whether Weyerhaeuser's claims are subject to arbitration in the United Kingdom – either by Judge Robart as part of the Initial Federal Litigation (if he ultimately determines that the arbitrability claims pled in that case are ripe) or part of this case if he does not. Maintaining the status quo in this fashion will not impose any harm on Hiscox or Starr and will allow for the orderly resolution of the issues before

MOTION FOR TEMPORARY RESTRAINING ORDER – 11

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   the Court.  As a result, Weyerhaeuser respectfully submits that issuance of an injunction is

2   warranted in this matter.

3                      III. **STATEMENT OF ISSUES**

4       Should the Court should issue a temporary restraining order barring Hiscox and
    Starr from seeking an anti-suit injunction in an English court, where doing so would
5   severely prejudice Weyerhaeuser's rights and deprive Weyerhaeuser of the ability
    to have its coverage claims heard in this Court; where the preliminary injunction in
6   the Western District Action currently preventing Hiscox and Starr from seeking an
    anti-suit injunction is imperiled; where other carriers with identical policy language
7   have already sought an anti-suit injunction; and where it appears clear that Hiscox
    and Starr will do so if a the injunction is not granted?
8
9                      IV. **EVIDENCE RELIED UPON**

10      Weyerhaeuser's Motion relies upon the pleadings and records on file in this matter, as

11  well as the Declaration of Jocelyn J. Whiteley and exhibits thereto.

12                     V. **AUTHORITY AND ARGUMENT**

13      Federal courts unquestionably have the power to issue foreign antisuit injunctions in the

14  appropriate circumstances.  *E & J Gallo Winery v. Andina Licores S.A.*, 446 F.3d 948, 989 (9th

15  Cir. 2006) ("Such injunctions allow the court to restrain a party subject to its jurisdiction from

16  proceeding in a foreign court in circumstances that are unjust.").  An applicant is entitled to a

17  foreign antisuit injunction if the following requirements are met: (1) the parties and the issues

18  in the two proceedings are the same such that "the first action is dispositive of the action to be

19  enjoined"; (2) the foreign proceedings at issue will *either* (a) frustrate a policy of the forum

20  issuing the injunction, (b) be vexatious of oppressive, or (c) prejudice other equitable

21  considerations; and (3) the impact on international comity is "tolerable" (The "*Gallo* test").  *Id.*

22  at 990, *citing Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th

23  Cir. 1981).

24      A. **Federal Standards for Issuing A TRO**

25      Federal courts grant injunctive relief where the plaintiff can demonstrate: (a) it is likely

to succeed on the merits; (b) it is likely to suffer irreparable harm, and; (c) the balance of equities

MOTION FOR TEMPORARY RESTRAINING ORDER – 12

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

tips in its favor; and (d) an injunction is in the public interest. *Id. citing Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Here, an anti-suit injunction against Hiscox and Starr is justified because (a) Weyerhaeuser is likely to succeed on the merits (*i.e.*, satisfy the *Gallo* test); (b) Weyerhaeuser will suffer irreparable harm if Hiscox and/or Starr secure an anti-suit injunction preventing it from pursuing its coverage claims in its chosen forum of Washington State, instead forcing it into arbitration in a foreign country; and (c) such relief is equitable and in the public interest.

**B. Weyerhaeuser Is Likely to Succeed on the Merits**

When a motion for temporary restraining order relates to a proceeding seeking a foreign antisuit injunction, federal courts do not require the plaintiff to demonstrate a likelihood of prevailing on the merits of its substantive claims, and instead look to whether the Gallo test is satisfied:

> The suitability of an anti-suit injunction involves different considerations from the suitability of other preliminary injunctions . . . . [S]hould [the plaintiff] also need to prove a likelihood of success on the merits of the breach of contract claim in order to receive an anti-suit injunction? That is, does our usual test for a preliminary injunction apply, or is a modified analysis required for anti-suit injunctions?
>
> . . . .
>
> [W]e hold that [the plaintiff] need not meet our usual test of a likelihood of success on the merits of the underlying claim to obtain an anti-suit injunction . . . . Rather, [the plaintiff] need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction.

*Gallo*, 446 F.3d at 990-91; *see also Microsoft Corp. v. Motorola, Inc.*, 871 F.Supp.2d 1089, 1097 (W.D. Wash. 2012) ("To obtain an anti-suit injunction the applicant is not required to show a likelihood of success on the merits of the underlying claim. Rather, it need only demonstrate that the factors specific to an anti-suit injunction weigh in its favor." (citation omitted)). An anti-suit injunction is warranted here under any of the factors articulated in the *Gallo* test for several reasons.

MOTION FOR TEMPORARY RESTRAINING ORDER – 13

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

First, the English proceedings Weyerhaeuser seeks to enjoin Hiscox and Starr from instituting would involve the identical questions of coverage and arbitrability under the same policies issued by the same insurers. Therefore, the relevant parties– those to this action and the potential parties to the U.K. action– are identical.  Weyerhaeuser satisfies the first requirement for obtaining a foreign anti-suit injunction.

Second, if Hiscox and Starr obtained an antisuit injunction from the English Court, it would frustrate Washington's clear public policy of protecting its Court's jurisdiction over insurance disputes.  RCW 48.18.200(1) provides: "No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement . . . . (b) depriving the courts of this state of the jurisdiction of action against the insurer."  The Washington Supreme Court has held that this statute "demonstrates the legislature's intent to protect the right of policyholders to bring an original action against the insurer in the courts of this state." *Dep't of Transp. v. James River Ins.*, 176 Wn.2d 390, 399, 292 P.3d 118 (2013) (quotation omitted).  If (a) Judge Robart dismisses the case before him for lack of a justiciable controversy and (b) Hiscox and Starr are not enjoined and secure an anti-suit injunction like XL Catlin, Weyerhaeuser will be unable to maintain an action in this State.  This would deprive Weyerhaeuser, a Washington-domiciled corporation, of the ability to bring suit against Hiscox and Starr – insurers who issued a policy for delivery to Weyerhaeuser in Washington and included the U.S. Dispute Clause in the policy that they provided to Weyerhaeuser – in a Washington court.  Moreover, such an anti-suit injunction preventing proceedings in Washington State is contrary to the public policy of enforcing choice of venue clauses in contracts such as the U.S. Dispute Clause.

Third, permitting Hiscox and Starr to resort to English courts to enjoin Weyerhaeuser from proceeding in this Court, as XL Catlin has done, would expose Weyerhaeuser to an unfair and inequitable burden that would plainly be "vexatious and oppressive" under any

MOTION FOR TEMPORARY RESTRAINING ORDER – 14

interpretation of that term.  Weyerhaeuser – a Washington State domiciled company – bargained with Hiscox and Starr for the right to sue to enforce its rights under the policies in a United States court for the specific purpose of avoiding the expense and inconvenience of having to proceed in a foreign forum like England.  It has asserted a right for coverage for losses incurred in the United States, and has already taken steps to secure its ability to litigate its coverage dispute with Hiscox and Starr in Washington through its filing of the Western District Action.  It would be vexatious and oppressive for Hiscox and Starr to deprive this Court of jurisdiction and force Weyerhaeuser to arbitrate its coverage dispute in London when the terms of the Policy specifically provide that Hiscox and Starr would "submit" to the jurisdiction of a United States court.

 Finally, other "equitable considerations" strongly support entry of a temporary restraining order to protect Weyerhaeuser's right to litigate the coverage dispute here in Washington.  Judge Robart expressly found that the *Gallo* test was met when he entered the temporary restraining order in the Western District Action:

> [T]he three factors for an anti-suit injunction set forth in *Gallo* have been met. First, the parties and issues in the two proceedings are identical. *See id.*  Second, the foreign court orders enjoining proceedings before this court would frustrate important policies of this forum and are likely vexatious and inequitable. *See id.; see also Microsoft II*, 696 F.3d at 886 (finding that the timing and location of the foreign action "raise[d] concerns of forum shopping and duplicative and vexatious litigation").  And third, an injunction against foreign court orders in this private contractual dispute will not intolerably harm the interests of international comity. *See Microsoft II*, 696 F.3d at 887.

Whiteley Declaration, Ex. E at 4.  Weyerhaeuser has also filed substantive coverage claims against Hiscox and Starr since that time.  *See* Whiteley Declaration, Ex. A.  Weyerhaeuser was proactive and forthright in seeking a declaration regarding the venue and arbitrability issue in the Western District Action, and it would be inequitable to allow Hiscox and Starr to unilaterally and opportunistically wrest control of this dispute from this Court if Judge Robart declines to

MOTION FOR TEMPORARY RESTRAINING ORDER – 15

exercise jurisdiction and dissolves his preliminary injunction.  The Court should enter a temporary restraining order to prevent this type of obvious and abusive forum shopping.

### C.   Weyerhaeuser Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

Should Hiscox and Starr secure an injunction by the English court, Weyerhaeuser will suffer irreparable harm to its right to maintain the instant coverage action if the Court does not enter a temporary restraining order.  If Judge Robart dismiss the Western District Action on justiciability grounds, the preliminary injunction currently preventing Hiscox and Starr may be dissolved – again, a position expressly argued by Hiscox and Starr before Judge Robart earlier this week.  It that were the case, nothing would prevent Hiscox and Starr from following in XL Catlin's footsteps, obtaining an anti-suit injunction in England, and forcing Weyerhaeuser to litigate its claims in a foreign court instead of Washington.

The fact that this unequitable outcome will work extreme and irreparable harm on Weyerhaeuser is undisputed.  Indeed, Judge Robart already determined that injunctive relief was warranted to prevent such an outcome, ruling:

> The TRO Defendants [including Hiscox and Star] may take a similar course of action as XL Catlin, thus *subjecting Weyerhaeuser to immediate, substantial and irreparable harm of being unable to proceed in its first-filed suit, and being forced to argue its case instead in a foreign court*.  Should Weyerhaeuser face injunctions similar to the one obtained by XL Catlin, *Weyerhaeuser is placed in the "severely prejudicial position" of forfeiting its choice of forum or facing significant penalties*.

Whiteley Declaration, Ex. E at 5.  Weyerhaeuser's risk of being forced to forfeit its choice of forum to have its coverage disputes is still immediate and irreparable, more than satisfying the federal courts' requisite for issuing a temporary restraining order.

### D.   Weyerhaeuser's Requested Injunctive Relief Is Equitable and in the Public Interest

For the reasons already stated herein (such as the Washington legislature's intent to protect the right of policyholders to bring an original action against the insurer in the courts of

MOTION FOR TEMPORARY RESTRAINING ORDER – 16

this state, *see* RCW 48.18.200(1)), public policy favors entry of Weyerhaeuser's requested injunctive relief.  By contrast, there is no public interest in this forum in acquiescing to foreign courts' interference in U.S. courts' exercise of their proper jurisdiction.  Moreover, Hiscox and Starr will suffer no prejudice by virtue of being ordered to refrain from using the English courts to meddle with this Court's jurisdiction.

### E. Preliminary Injunction Hearing, Notice and Security

As noted above, Weyerhaeuser previously provided notice to Mark Scheer, counsel for Hiscox and Starr, of its intent to seek a temporary restraining order on the morning of August 13, 2019.  Hiscox and Starr removed this action in response and, as noted above, filed the Stay Motion on August 14, 2019, establishing that they are clearly aware of Weyerhaeuser's intent to seek injunctive relief.  This Motion will be served on Mr. Scheer via ECF at the time of its filing, providing him further notice.

If this Court grants Weyerhaeuser's request for injunctive relief, Weyerhaeuser respectfully submits that the Court should not require a bond in conjunction with the requested TRO as no financial burden or loss on Hiscox and Starr will by imposed by enjoining English proceedings for a short time.  *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (district court need not require bond when enjoining foreign proceedings).

## VI. <u>CONCLUSION</u>

In order to preserve the Court's jurisdiction and maintain the status quo, Weyerhaeuser respectfully submits that the Court should issue a temporary restraining order barring Hiscox and Starr from seeking an anti-suit injunction in an English court on the same terms already ordered by Judge Robart.  A proposed order granting the relief requested is submitted herewith.

//

//

//

MOTION FOR TEMPORARY RESTRAINING ORDER – 17

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

DATED this 16th day of August, 2019.

                                      *s/ Michael A. Moore*
                                      Michael A. Moore, WSBA No. 27047
                                      Kelly H. Sheridan, WSBA No. 44746
                                      Jocelyn Whiteley, WSBA No. 49780
                                      CORR CRONIN LLP
                                      1001 Fourth Avenue, Suite 3900
                                      Seattle, Washington  98154
                                      (206) 625-8600 Phone
                                      (206) 625-0900 Fax
                                      Email:  mmoore@corrcronin.com
                                                  ksheridan@corrcronin.com
                                                  jwhiteley@corrcronin.com
                                      Attorneys for Plaintiff

MOTION FOR TEMPORARY RESTRAINING ORDER – 18

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

Mark P. Scheer
Jennifer L. Crow
Matthew C. Erickson
Scheer.Law PLLC
600 University Street, Suite 2100
Seattle, WA  98101
Phone: (206) 800-4070
Email: mark@scheer.law
        Jen@scheer.law
        MattE@scheer.law

*s/ Michael A. Moore*
Michael A. Moore, WSBA No. 27047
Attorney for Plaintiff
CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington  98154-1051
Telephone: (206) 625-8600
E-mail: mmoore@corrcronin.com

MOTION FOR TEMPORARY RESTRAINING ORDER – 19

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1257 00003 jh16dt27xr